```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF GEORGIA
                         COLUMBUS DIVISION
```

ELOISE ROPER,                    \*

      Plaintiff,         \*

vs.                              \*

                            CASE NO. 4:06-CV-119 (CDL)

                                   \*

TERRY WILLIAMS, individually
and d/b/a SIBERTON FENCE and     \*
SIBERTON FENCE SALES, INC.,
                                   \*

      Defendants.
                                   \*

## O R D E R

This diversity case arises from an automobile accident caused when the truck owned by Defendant Siberton Fence Sales, Inc. and driven by Defendant Terry Williams collided with the vehicle in which Plaintiff Eloise Roper was a passenger. Presently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 37). For the following reasons, Defendants' motion is granted in part and denied in part.[1]

---

[1] Also pending before the Court is Defendants' Motion in Limine (Doc. 57) to exclude Victoria Hall's testimony regarding (1) the alleged speed of Williams's vehicle and (2) whether Williams could have avoided the accident. With respect to the speed of Williams's vehicle, Hall testified only that it appeared to be traveling "at the normal rate," that it was "not speeding," and that it appeared to be traveling between 40 and 50 miles per hour. (*See* Hall Aff. ¶ 2, Nov. 27, 2006; Hall Dep. 42:10-17, Jan. 24, 2007.) Hall based her observations on the fact that the Williams vehicle appeared to be moving with the general flow of traffic on Veterans Parkway. (Hall Dep. 42:18-22.) The Court cannot say, therefore, that her opinion is not rationally based on her perception and that it is not helpful to determining a fact in issue in this case; moreover, Hall's general observations do not require scientific, technical, or specialized knowledge. *See* Fed. R. Evid. 701. On the other hand, the Court finds that Hall's ultimate conclusion that Williams could have avoided the accident is inadmissible under Federal Rules of Evidence Rule 701. While

## FACTUAL BACKGROUND

When viewed in the light most favorable to Plaintiff, the record establishes the following facts:

### I. The Accident

Although the parties dispute the specific circumstances of the accident, the record establishes that on April 1, 2006 at approximately 5:00 p.m., Plaintiff was riding in a car driven by her friend Woodrow Tate. Plaintiff and Tate were traveling west on Lorraine Street towards the intersection of Lorraine and Veterans Parkway.[2] While the parties dispute whether Tate approached the intersection intending to turn right or left, it is undisputed that Tate entered Veterans Parkway after disregarding a stop sign and without the right of way. Defendant Terry Williams ("Williams") was traveling north along Veterans Parkway, driving a Ford F-350 truck owned by Defendant Siberton Fence Sales, Inc. ("Siberton"). There is no evidence that Williams was traveling in excess of the posted speed limit at or near the time of the collision. Williams was operating the vehicle in the scope of his employment, and the vehicle contained at least one other passenger, Scott Gilley.

---

the observations that underlie Hall's conclusion are certainly relevant to resolving the facts at issue in this case, the opinion itself is not helpful to the trier of fact. Accordingly, Hall's opinion that the accident was avoidable is excluded from the record. Defendants' motion in limine is thus granted in part and denied in part.

[2]Where the accident occurred, Veterans Parkway has two northbound lanes and two southbound lanes, bisected by a center turning lane commonly known as a "chicken" lane. Lorraine Street is a side street governed by a stop sign. (*See* Pl.'s Ex. 1 to Isasi Dep., Jan. 24, 2007.)

2

Williams and Gilley testified that the right, northbound lane of Veterans Parkway was blocked with traffic, and that Tate's vehicle darted into the left lane of Veterans Parkway from between two vehicles located in the right lane. (Williams Dep. 26:18-27:5, Jan. 25, 2007; Gilley Dep. 18:24-19:3, July 16, 2007.) Williams testified that the collision occurred entirely in the left lane, that no part of the Siberton truck entered into the right lane, and that he did not honk his horn or swerve to avoid the accident. (Williams Dep. 34:23-35:7; 35:21-36:6.)

Eyewitness Victoria Hall provides a different account of the circumstances of the collision. Hall was standing with her brother and a friend on the sidewalk flanking Veterans Parkway, approximately 500 feet from the collision. Hall testified that she first noticed Williams's truck because she heard Williams honking the truck's horn at her, and at least one passenger was leaning out the window of the truck and making "catcalls" towards her. (Hall Dep. 38:1-12; 41:21-42:9.) Hall also noticed that Williams was driving erratically, swerving from right to left and drifting across the lane divider twice. (*Id.* at 43:17-44:17.) Hall looked at her brother, commented, "That's what causes accidents," and looked back up in time to witness the collision. (*Id.* at 45:9-21.) Hall testified that the traffic was "surprisingly light" and that no vehicles blocked her view of the collision. (*Id.* at 36:14; 37:12-20.) It appeared to Hall that Williams's truck swerved again into the right lane, where the truck

3

clipped the right side of Tate's vehicle.  (*Id.* at 45:22-25.)  In contrast to Williams's testimony, Hall's testimony indicates that the collision took place in the right lane.  (*Id.* at 49:10-24.)  As a result of the collision, Plaintiff suffered serious injuries, and she accumulated substantial medical bills and other expenses.[3]

**II. The Investigation**

Corporal Roy Isasi, a veteran police officer with over twenty years of experience investigating automobile collisions, responded to the scene of the accident.  Isasi testified that when he reached Tate, Tate said, "I'm sorry.  I didn't see him coming." (Isasi Dep. 13:12-16.)  Isasi observed that the right quarter panel of the Siberton truck had come to rest in the right lane.  (*Id.* at 16:8-17.) At his deposition, Isasi recalled the resting position of the vehicles and diagrammed the Tate vehicle at a forty-five degree angle, resting mostly in the right lane of Veterans Parkway.  Isasi placed the Siberton truck at an angle toward the right lane.  (*Id.* at 24:1-23; Pl.'s Ex. 1 to Isasi Dep.)  At their depositions, Gilley and Williams diagrammed the positions of the vehicles in a manner inconsistent with that of Isasi's diagrams.  (*See* Exs. 1-3 to Williams Dep.; Ex. 1 to Gilley Dep.)  Isasi's placement of the

---

[3]Tate, the driver of the vehicle in which Plaintiff was a passenger, died as a result of injuries suffered in the accident.  Plaintiff settled her claims against Tate's estate, and neither Tate nor his estate is presently a party to the pending action pursuant to an Order entered by the Court on April 5, 2007.

4

vehicles is more consistent with Hall's eyewitness account of the accident.

Several months after the accident, Defendants' expert, William Partenheimer, observed the scene, the photographic evidence, and the deposition testimony of the witnesses in an effort to reconstruct the accident. Partenheimer rejected Isasi's placement of the vehicles, reasoning that the damage patterns to the vehicles were inconsistent with Isasi's diagrams. (Partenheimer Dep. 32:22-33:4, Aug. 1, 2007.) Partenheimer concluded that it would be physically impossible for the Siberton truck to have swerved into the right lane, impacted with the Tate vehicle, and then carried the Tate vehicle back to the ultimate point of rest in the left or center lane. (*Id.* at 30:12-21.) Partenheimer conceded, however, that because his investigation occurred so long after the accident, he relied in large part on the testimony of the witnesses in formulating his conclusions. (*Id.* at 31:14-17.)

## III. Plaintiff's Claims

In the first count of her Amended Complaint, Plaintiff alleges that Defendant Williams' negligence "in failing to exercise ordinary care of the operation of his vehicle" was the direct and proximate cause of her injuries. (Am. Compl. ¶ 9(a).) Plaintiff also asserts that Williams was negligent per se for violating various Georgia traffic laws. Plaintiff contends that Defendant Siberton Fence Sales is liable for Williams's conduct on the basis of respondeat superior.

Defendants argue that Williams was not negligent, that the accident was unavoidable, and that Williams was not the proximate cause of the accident.

In the second count of her Amended Complaint, Plaintiff contends that Defendant Siberton Fence Sales is liable under a theory of negligent entrustment. Specifically, Plaintiff claims that Defendant knew that Williams had received several traffic citations over the past several years, establishing its knowledge of a pattern of reckless conduct. Plaintiff also contends that Siberton's removal of Williams from its insurance coverage and revocation of his driving privileges is further evidence of Siberton's knowledge of Williams's tendency towards reckless driving. Defendants contend that because there is no dispute that Siberton informed Williams that he was no longer authorized to drive their company vehicles, Plaintiff's negligent entrustment claim must fail. Plaintiff also asserts that Defendants are liable for punitive damages associated with both counts of her Complaint, under O.C.G.A. § 51-12-5.1(b).

For the following reasons, Defendants' Motion for Summary Judgment is granted as to Plaintiff's claims for punitive damages and Plaintiff's claims for negligent entrustment. However, Plaintiff demonstrated the existence of genuine issues of material fact as to whether Williams's negligence proximately caused her injuries. Therefore, summary judgment is not appropriate in favor of Williams on Plaintiff's negligence claim or in favor of Siberton on Plaintiff's respondeat superior claim.

DISCUSSION

## I. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court resolves "all reasonable doubts about the facts in favor of

the non-movant, and draw[s] all justifiable inferences in his . . . favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and citation omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (internal quotation marks and citation omitted).

**II. Negligence Claims against Defendant Williams**

"It is well settled in Georgia, that '[q]uestions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and undisputable cases.'" *Williams v. Kennedy*, 240 Ga. 163, 163, 240 S.E.2d 51, 52 (1977) (internal citations omitted). The Court finds that this is not a "plain and undisputable" case. Genuine issues of material fact exist as to whether Williams was negligent and whether his negligence proximately caused Plaintiff's injuries. Therefore, Defendants' motion for summary judgment is denied as to Plaintiff's negligence claim against Williams.

**III. Claims against Defendant Siberton Fence Sales**

A. Respondeat Superior

Plaintiff first contends that Siberton is responsible for Williams's alleged negligent conduct based upon respondeat superior

liability. "When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master." *Upshaw v. Roberts Timber Co., Inc.*, 266 Ga. App. 135, 136, 596 S.E.2d 679, 681 (2004) (internal quotation marks and citation omitted). "Where a vehicle owned by a person and driven by his employee is involved in a collision, a presumption arises that the employee was in the scope of his employment at the time and the employer has the burden to show otherwise." *Id.* (citation omitted). Such a presumption may only be overcome by "uncontradicted evidence." *Id.* In this case, Siberton admits "that the doctrine of *respondeat superior* is applicable as a result of Defendant Williams' employment, but denies that Defendant Williams was negligent." (Ans. of Def. Siberton Fence Sales, Inc. ¶ 5.) However, because genuine issues of material fact exist as to Williams's negligence, Siberton's motion for summary judgment must be denied as to Plaintiff's respondeat superior claim.

### B. Negligent Entrustment

Plaintiff also contends that Siberton negligently entrusted the company vehicle to Williams. As Georgia courts have observed:

> Under the theory of negligent entrustment, liability is predicated . . . on a negligent act of the owner in lending his automobile to another to drive, with actual knowledge that the driver is incompetent or habitually reckless, and this negligence must concur, as a part of the proximate cause, with the negligent conduct of the driver on account of his incompetency and recklessness.

9

*Williams v. Britton*, 226 Ga. App. 263, 263, 485 S.E.2d 835, 836-37 (1997) (internal quotation marks and citation omitted) (alteration in original). Georgia law also provides that generally, "when an employer admits the applicability of respondeat superior, it is entitled to summary judgment on claims for negligent entrustment, hiring, and retention." *Durben v. Am. Materials, Inc.*, 232 Ga. App. 750, 751, 503 S.E.2d 618, 619 (1998). "Since the employer would be liable for the employee's negligence under respondeat superior, allowing claims for negligent entrustment, hiring, and retention would not entitle the plaintiff to a greater recovery, but would merely serve to prejudice the employer." *Id.* (citations omitted). An exception to this rule exists "where a plaintiff has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee or entrusting a vehicle to such employee." *Id.* "In such case, it cannot be said that the negligence claims against the employer are merely duplicative of the respondeat superior claim." *Id.* In order to avoid undue prejudice to the defendant under such circumstances, however, the defendant is entitled to a separate trial on the negligent entrustment claim. *Id.*

Based on the foregoing principles, "the question to be resolved is whether [Plaintiff] has a valid basis for punitive damages on her negligent entrustment . . . claim[]." *Id.* In this case, as discussed in Section IV *infra*, Defendants are entitled to summary

10

judgment for the punitive damages associated with Plaintiff's negligent entrustment claim. Siberton also admits to liability on the basis of respondeat superior. (*See* Ans. of Def. Siberton Fence Sales, Inc. ¶ 5.) Since Siberton's liability under respondeat superior is identical to its liability under negligent entrustment, Defendants are entitled to summary judgment on Plaintiff's negligent entrustment claim. *See Bartja v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 218 Ga. App. 815, 817-18, 463 S.E.2d 358, 361 (1995) (finding defendant entitled to summary judgment on negligent entrustment claim where summary judgment properly granted as to punitive damages claims).

## IV. Punitive Damages

Georgia law authorizes the imposition of punitive damages "only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). Accordingly, "[s]omething more than the mere commission of a tort is necessary for the imposition of punitive damages. Negligence alone, even gross negligence, is insufficient to support punitive damages." *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 173, 537 S.E.2d 356, 361 (2000).

"Whether a defendant's actions are wilful, wanton, or evince an entire want of care as to authorize punitive damages by clear and convincing evidence under O.C.G.A. § 51-12-5.1(b) is normally an issue for consideration by a jury." *Keith v. Beard*, 219 Ga. App. 190, 194, 464 S.E.2d 633, 638 (1995) (citations omitted). However, when there is insufficient evidence of the requisite wilful or wanton behavior in the record to submit the question of punitive damages to a jury, summary adjudication is proper. *See id.*

In this case, Plaintiff asserts that Defendants are liable for punitive damages on Plaintiff's negligence and negligent entrustment claims. The Court finds that a reasonable jury could not conclude by clear and convincing evidence that Williams's conduct amounts to willful misconduct or that entire want of care which would raise the presumption of conscious indifference to consequences.[4] Therefore, Williams is entitled to summary judgment on Plaintiff's punitive

---

[4] Generally, in order to justify punitive damages arising from an automobile accident, Georgia courts have "required that the collision result from a pattern or policy of dangerous driving, such as driving while intoxicated or speeding excessively." *Brooks v. Gray*, 262 Ga. App. 232, 233, 585 S.E.2d 188, 189 (2003) (internal quotation marks and citations omitted). In this case, the record indicates that Williams had three previous citations for speeding and one for an accident. (Ex. 3 to Defs.' Br. in Supp. of Their Mot. for Summ. J.) Even if it could be said that Williams's speeding citations constituted a "pattern or policy" of speeding, the record contains no evidence that this particular accident resulted from Williams's excessive speed. *See Brooks,* 262 Ga. App. at 233, 585 S.E.2d at 190 (finding punitive damages inappropriate when juvenile driver was operating vehicle during hours prohibited by license because "driving after 1:00 a.m. was not the proximate cause of the accident"); *Carter v. Spells*, 229 Ga. App. 441, 443-44, 494 S.E.2d 279, 282 (1997) (plurality opinion) (observing that tickets for speeding and no proof of insurance did not support punitive damages because the "collision did not stem from speeding").

damages claim. For the same reason, Siberton Fence is not liable for punitive damages on a respondeat superior theory.

As to Plaintiff's punitive damages claim against Siberton based upon its alleged negligent entrustment, the Court finds that no reasonable jury could find by clear and convincing evidence that Siberton's conduct in entrusting the vehicle to Williams showed willful misconduct or that entire want of care which would raise the presumption of conscious indifference to consequences. See *Bartja*, 218 Ga. App. at 818, 463 S.E.2d at 361-62 (holding that summary judgment was appropriate in favor of employer on punitive damages claim even assuming employer knew that employee's driving history included two moving violations and at least two accidents over the previous three to four years); *see also Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1154, 1155 (11th Cir. 1993) (per curiam) (applying Georgia law and finding summary judgment appropriate even though employer had actual knowledge that its employee's three-year motor vehicle report contained: (1) four speeding citations; (2) a citation for operating his truck without proper brake lights; (3) a license suspension for refusing to take an alcohol test; (4) an improper backing citation; and (5) involvement in a wreck).

In this case, although Williams may have been dropped from Siberton's insurance coverage due to four traffic citations accumulated over three years, the seriousness and frequency of his infractions do not rise to the level that would support the

imposition of punitive damages. In fact, Williams's commercial driver's license remained valid notwithstanding these violations. Plaintiff simply failed to produce sufficient evidence creating a genuine issue of material fact as to whether Siberton's alleged negligent entrustment also supports a claim for punitive damages. Therefore, Defendant Siberton is entitled to summary judgment on Plaintiff's punitive damages claim against it.

CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment (Doc. 37) with respect to Plaintiff's claims for punitive damages and negligent entrustment. Defendants' motion is denied, however, with respect to Plaintiff's claims for negligence and negligence per se. Defendants' Motion in Limine (Doc. 57) is granted in part and denied in part.

IT IS SO ORDERED, this 31st day of January, 2008.

                                                 S/Clay D. Land
                                                           CLAY D. LAND
                             UNITED STATES DISTRICT JUDGE